20-1837, TvnGO v. LG Electronics, Inc. 20-1837, TvnGO v. LG Electronics, Inc. 20-1837, TvnGO v. LG Electronics, Inc. 20-1837, TvnGO v. LG Electronics, Inc. No one is contending there's a plain and ordinary meaning for these terms, and there's no reference to these terms in the specification. So, am I correct about those predicate kind of facts? Well, we maintain that the terms should be afforded their plain and ordinary meaning. I think the point you're getting at is that the experts agree that the terms, the whole phrase, like overlay activation criterion, didn't have an ordinary meaning in the ART, but that doesn't mean that the terms individually don't have a plain and ordinary meaning. Just like overlay has a meaning, criterion has a meaning, signal has a meaning, activation has a meaning. Counselor, but if you give the terms a plain and ordinary meaning, aren't you left with a stark contradiction between the terms? Well, no, I don't think so, Your Honor. I think overlay activation criterion is used consistently across each of the patents in which it appears. It's always referring to what I would refer to as an initial overlay, such as shown in Figure 7A of the patent. In each instance where overlay activation criterion appears, the result is the initial display of an overlay. When we get to overlay activation signal, yes, the claims use it in two different manners. One, to display the initial overlay, and then secondly, using the signal to select the initially displayed overlay to display the underlying or associated IT material. Well, here's a problem I see. I'm seeing a little confusion here, and this is just with the intra-patent issues the court judge covered on pages 8 and 10. The one thing we do have to look to in the spec is it uses the word activate, not overlay activation, not the terms that appear in the claims, but at least the word activate. The passage in the spec describes activating an overlay. That seems like a way to figure out what overlay activation means. Let me finish my question, okay? The passage describes using a remote control to activate an already displayed icon, an overlay, and that doing so results in the display of IP content associated with that overlay. Here's my problem. The claims recite displaying or generating or obtaining an overlay that is not yet developed, but the specification, when it uses the only overlapping word, which is activating, describes selecting an overlay that is already displayed. Just tell me. This is, I think, the concern the district court was having. How does one of ordinary skill in the art understand whether the disputed terms result in activating an overlay that is already displayed, which is what the specification is talking about, or displaying an overlay for the first time, what it seems to me the claims are doing? Sure, Your Honor. The term activate refers to the one embodiment the district court noted where the initial overlay is already on the screen and the user presses a button on the remote control to activate the underlying IP material. I will let you answer, but just to be clear, you don't quibble that she should have looked to that because it's the only word from the claims that appears in the spec? I don't have a problem with the district court citing that particular section of the specification, but I think the question is what one of ordinary skill in the art would understand by the other embodiments disclosed in the specification. For example, on the overlay activation criteria, we have examples where the user can program the system to filter out certain IP content that is not of interest. The example in the specification talks about figure three in the related description about when the system- But don't you think it's fair game for one trying to understand the scope of the claim to track down that word? The phrases don't appear in the spec, so don't think it's fair game for one skilled in the art to search out that word activate, the only overlapping word, and to define its use is arguably informing what you mean by activation and all those terms in the claim. That's fair game, right? It's fair game, but I think the claim term is activation is really just making something operative, and that's consistent with the specific examples used in the specification. Again, when we talk about overlay activation criteria in figure three in the related text, it talks about when the system determines there's a match, it displays the overlay, so that it is activating the overlay that is stored in memory when certain conditions match. It can do its filtering. I think one of the skill in the art reading that example and that embodiment in the specification would understand that in that case, it's also activating an overlay. Go ahead and finish that thought. The other aspect is generating versus displaying, and I think LG and the District Court seem to suggest that when we use the term generate, the overlay, we're talking about creating the overlay out of whole cloth, and that's not how the system works. Yeah, but your claim construction was shifting over time, and you say displaying and generating are the same thing, but how does one of ordinary skill know that? I mean, they're different words, so wouldn't one fairly assume that they meant different things? No, I think when you're talking about prosecuting five patents and 100 claims over a 10-year period, it's not surprising that they use different words to describe the same outcome. If you look at the actual claim language, it tells you what generating means. It's generating display drive signals that cause the TV to display the overlays. So, Counselor, you're arguing that we should consider that the claims are understandable on their face. Exactly. I think it's very clear. I think that there's a problem with that, and the way I understand your argument is you're looking for the plain meaning for the claim terms, and as you just said, that they're understandable on their face, but there's still a discrepancy between the claims and the specification, and if that's the case, if we're looking at a discrepancy between the specification and the plain meaning of the claims, then isn't this a written description issue? Well, it could be. I mean, you jump out of a pot into the fire. Well, LG never raised a written description argument in this lengthy claim construction process we went through. I think the other point I wanted to make is we have the claims. You can read the claims, and even the district court could understand, okay, in this claim, the signal is resulting in display and overlay. In this claim, the signal is resulting in display of IP material. The question is, is there support in the specification for those interpretations or those plain meanings when you read the claim, and there is. We have plenty of examples where the criterion is satisfied, which results in the display of an overlay. We have examples in the specification where the user can use a signal to activate the displayed overlay to show the underlying IP material. I would point you to Figure 7 when we go from 7A to 7B. And then we have examples in the specification where we're using the signal to generate the initial overlay. Okay, counsel, before you sit down, I think I heard the tone. Before you sit down, let me ask you, so how do you respond to LG's argument that different claim terms should have different meanings? Well, I think that it's certainly permissible. We've cited you the relevant case law that there's nothing wrong with that. What we tried to do in our proposed construction is say, okay, yes, in some claims, the signal results in an overlay. In some claims, the signal results in IP material. Here's a proposed construction where it's one or the other. It's A or B. We could have offered patent-specific constructions, but we chose just to offer one construction that would cover both embodiments. And the district court never really considered that. So I wouldn't say we're shifting. We're just saying, okay, if you want to construe it, here's a way to construe it that would cover all the various aspects and embodiments that the claims are covering that are supported in the specification. Okay, if you've responded to Judge Rayna, let's reserve your rebuttal and hear from Mr. Peterson, please. Thank you. Thank you. Thank you. May it please the court, in a careful and thorough analysis, after several rounds of briefings, the district court correctly concluded that the terms overlay activation criterion and overlay activation signal are indefinite. And I think my friend's argument really highlighted the problem with these patents, which is what we're looking for here are objective boundaries that one of skill in the art could use to determine what is claimed by these patents and what is left open to the public and not claimed. As was pointed out, it's undisputed. These are not terms that are commonly used in the art. There's no suggestion that one of skill in the art has ever used these terms outside the context of this patent. And there's no suggestion that these phrases, when put together, have any sort of ordinary meaning to a person on the street. This court's precedent. But I think your friend, Mr. Peterson, this is Judge Crouse, I think your friend suggested there was kind of a plain and ordinary meaning because if you tease out the phrases like overlay activation signal, each word in that phrase has a known meaning. So I think that's how they would respond to your suggestion that there's no plain and ordinary meaning of the phrase. So what do you say to that? Well, I would say it's both wrong legally and factually, Your Honor. And legally, of course, the fact that each word individually has an ordinary meaning doesn't mean that there must be an ordinary meaning when the phrases, when the words are put together. If that were the case, there could be no indefiniteness in the absence of lexicography. Patentees tend to use words that already exist. And it's just one example of this in a recent decision. Counselor, that may be true if you're dealing with a complex technology. But this technology here, what we're looking at in this pen is not complex. It's rather simple. Respectfully, Your Honor, I disagree. And I agree the concepts may be fairly simple, but I don't think the words are. So let me say my friend suggested there's no dispute over what an overlay is. That's incorrect. In the context of a pen that has simple technology, what's the difference between the words activates and inactivating? I mean, apposo, we've got to give some sort of practical sense to a person of ordinary skill. Yes, Your Honor, that's correct. But I actually think activate is not something that has an ordinary meaning in any kind of software context. My friend suggests that activate might mean to display, to show on the screen. If that's the case, then I suppose my computer activates every program on my desktop when it shows an icon when I turn it on. Activate may mean to interact with a piece of software in some way. And that's the issue, that activation here, this is not a word that is used in the specification. It's not a word that appears anywhere other than figure three or the reference to figure three in the specification. Whereas Chief Judge Gross pointed out it refers to activating an icon already showed. I'm sorry, not with figure three. And I think your view would be, Mr. Peterson, that it's not, we're not looking for, even if you're not looking at any particular word in the claim, even if you're not just looking at the phrase, if you take what's going on with respect to the word activating, which we reasonably gravitate to because that's the only mention in the spec where there's an overlap with the claim. We're talking about, it arguably appears that there are two different things going on with respect to activation in the spec and in the claim. Am I right about that? Absolutely, Your Honor. And as we read the specification, overlay is talking about, if you look at column one, in particular lines 38 to 40, this visual and legible indication of available internet movies. And so we understand that an overlay is distinct from this IP format material that is associated with the overlay. That's at least what we understand an overlay to be. So when you start talking about activating that overlay, my friend suggests that that's exactly the same thing as displaying the IP format material that is associated with that overlay. And when you start trying to put that together with the claims, they start running into each other. I'll point out to you just some of the inconsistencies you'll see here in the claims. If you look, for example, at the 621 patent and claim one, and just trying to understand the differences in the signals. So in the 621 patent, there are two different, I suppose they might be signals, there are two different interactions perhaps. One is responding to an overlay activation signal by reading out overlays from memory and generating display-derived signals to display the overlays. And then there's a second response to a user's selection of a displayed overlay by generating display-derived signals. However, if you look at the 339 patent, the 339 patent is similar. But there you respond to an overlay activation criterion to cause the display screen to display the overlays as part of the screen image. But you respond to an overlay activation signal selected at the user's premises to cause the screen to display the IP format material. So in the 621 patent, you have a user selection that causes the TV screen to display the IP material. In the 339 patent, you have an overlay activation signal selected by the user to cause the screen to display the IP format material. Why one of those is a user selection and one of those is an overlay activation signal? My friend has never suggested. And let me suggest also I think there's a broader issue. What my friend I think is suggesting is that we just define these words according to all of the other limitations in the claims. That he's suggesting that really an overlay activation criterion is any kind of criterion that satisfies the other limitations. An overlay activation signal is any kind of signal that satisfies the other limitations. And that's not an answer to indefiniteness. This is the case here. Mr. Peterson, I'm sorry to interrupt, but time is moving on. And I just have a housekeeping type question which I'd like you to respond to. And I'll also ask your friend on the other side. As you've pointed out, we've got five different patents here. And there were numerous bases upon which the district court relied on her indefiniteness conclusions. So let me just, you know, as a hypothetical, if we were to agree with her analysis, for example, pages 8 through 10, I believe, where she's talking about the activate and the spec, which we discussed with your friend a bit, and the activation language in the claims. I think that her analysis with respect to the claims versus the spec on activation, my understanding is that's an intra-patent analysis. And that would take care of all the claims in all five patents. Is that right? Yes, Your Honor, I believe that is correct. The intra-patent inconsistencies do include all five of the assertive patents. Okay. I mean, there are other issues that she decided on that only deal with, even in the intra-patent, is the overlay activation criterion where it's an intra-patent and that's the issue involving the independent versus the dependent claims. But my understanding is that only covers three of the patents and not all five. But it is my understanding, and as I said, maybe your friend can confirm this for us on his rebuttal time, that her conclusions with respect to the spec language of activate versus the claim would cover all of them. So that's your view, right? Is that my understanding? You'll forgive me, Your Honor. Let me look. Sure. No, I understand. These are the kinds of questions you want to ask at argument, because when it comes to writing an opinion, you can get really confused unless the parties seem to be in agreement. So I appreciate. Yes, I believe that is correct. If you look at all five of the assertive patents, each of them are using the overlay activation criterion and the overlay activation signal in a way that... She concluded inconsistent with the activate use, or at least indefinite because of the use of the word activate in the spec, right? Yes, Your Honor. That is correct. And just one note on these phrases. This is not an accident that these phrases are included in the claims. This is not a case where we are picking a stray phrase out of one claim. This is a case where these phrases were used repeatedly in every single independent claim of all five patents. It was a conscious choice by the inventor not to claim any criterion, a conscious choice by the inventor not to claim any kind of signal, but to only claim overlay activation criterion and overlay activation signal. And in those circumstances, it's necessary that one of skill and the art understand objectively what the outer boundaries of that are. And I'll also point to you, you'd asked about... I'm sorry. Can you hear me? Yes, Your Honor. Judge Reyna raised an interesting point with your friend on the other side, which was, well, why isn't this kind of a written description issue? I might also add, or an enablement issue. We see a lot of these cases, a lot of cases where new claims are added somewhere in the process, and we're looking at what's the match between what's in the new claim phrasing and whether there's sufficient written description in the existing specification or even whether or not there's enablement. I get that. I mean, we see it in a lot of these cases. But I guess your view, I assume, would be that maybe that's right and maybe you could have a written description issue in these claims, but that doesn't dislodge the indefiniteness inquiry, which is at least an equally plausible basis for reviewing this patent. Am I correct about that? Yes, Your Honor. I think that's correct. And I view the indefiniteness issue as a preliminary issue, that one would first have to resolve what the claims mean before then going on to address written description and enablement. Certainly, I think there would be serious, likely fatal enablement and written description issues if this court were – and again, I'm not entirely certain what construction my friend is urging for these terms. I would say this court – Please proceed, Mr. Peterson. You have three minutes remaining. Thank you, Your Honor. I'll be very brief. You mentioned the dependent and the independent claims and the source of the overlay activation criterion. I do think it's important that we not look at this just as a potential conflict between the scope of a dependent and an independent claim, but as something that does actually bear on what an overlay activation criterion is. I think my friend in the reply brief has now embraced the idea that an overlay activation criterion is a condition of some sort that is transmitted as part of the overlay enabling digital data. If you look at appendix page 1437, essentially continuing through appendix page 1444, you'll see a lengthy discussion between the district judge and Mr. Kentine attempting to understand this at argument below. There, they were emphatic that the overlay activation criterion was not a condition, that a condition was something that was set by the user and that the overlay activation criterion was really just any kind of information that may have some relevance to the information  So we do think the presence of user command information in that dependent claim, it's not just a question of a conflict of the scope of the two claims, but really is what is this intended to be? And as I understand the argument below at least, it was that overlay activation criterion ends up being essentially any kind of information. We're simply not seeing objective boundaries here for one of skill and the art. And as I think my friend has said, their constructions keep getting broader and broader and broader to cover essentially anything and are untethered from the language of the specification, which doesn't use either to raise overlay activation signal or overlay activation criterion. If the panel has no further questions, I'll happily return what time I have left. Thank you. Mr. Kentine, now can I ask, have you take just a very brief time at the outset to answer the question I asked your friend just about the mapping as hypothetically? If the district court's discussion at 8 through 10, which deals with largely the specification language of activate and the claim language, if that result would cover all of the claims in dispute in this case? Well, I would say, Your Honor, the 339 patent is the only claim where the overlay activation signal is recited as a user selecting an initial overlay to display the underlying IP material. So the use of overlay activation signal in the 339 patent is consistent with the way the district court interpreted that Week in 10 was overly narrow. Now, yes, the 339 patent also uses the overlay activation criterion. If to the extent activation was somehow divorced from that limitation, we'd have to deal with that. But, again, the 339 patent, if I can, deals directly with the example described in Figure 3. And I think that the point we're trying to make is the limiting activation to just the single embodiment disclosing the specification is improper. One of ordinary skill in the art, looking at the example in Figure 3, and if you actually look at Figure 3, we have the diamond in the middle that says, Do conditions match? If yes, overlay the IP material or overlay the icon. One skill in the art of reading that passage and looking at that figure would understand that that is overlay activation criterion, that the criterion is signaling the display of the overlay. So I think limiting the term activation in the manner the district court did essentially is limiting it to one embodiment disclosing the specification is improper. I think these claims need to be read in the context of the overall purpose of the invention, which is how do these displays or how do these overlays appear on the TV screen? And there's two different ways. They can appear automatically through the criterion or they can appear manually through the signal. And I agree with one of the comments, I think maybe it was Judge Rain that made it right. These concepts and words are not technical. They're very simple. And not every claim term needs to be defined in the specification. I'll give you an example. My friend on the other side mentioned this overlay enabling digital data. That was a term that they initially disputed, but then they dropped it and they were fine with the plain and ordinary meaning of that term. But that's not a term that appears in the specification either. There is no requirement, and they haven't cited you a case, that says every term that appears in a claim needs to be defined somehow in the specification or even appear in the specification. And I would also point to the prosecution history. And this is not a term that just, you know, appeared once and kind of slipped through by the examiner. These terms were specifically added by amendment. They were subject to interviews with the examiner where he asked where are these terms supported. They had amendments back and forth. And the examiner cited prior art, particularly over the overlay activation criteria. I'll point you to the Butler reference, which we cited in our brief. That dealt with overlays, which confirms that overlays does have a meaning in the art. And Butler talked about this control data that came along with the overlays  And the examiner was able to look at Butler and say, okay, the control data of Butler is the same or allegedly the same as the overlay activation criteria in the specification. And they made rejections and, again, interviews and discussions with the examiner. So I think the prosecution history in this case, the extent of it, really supports the fact that these terms are understandable when read in the specific context of each of the claims at issue. I think that buzzer was for me. Yes, it was. Thank you very much. We thank both sides, apologize for the glitch, and the case is submitted. That concludes our proceeding for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m.